# Kerbaugh *v.* United States Express Company, Appellant.

*Negligence—Pedestrian run down by wagon—Street crossings—Traffic signals.*

1. In an action against the owner of a wagon to recover damages for injuries sustained by the plaintiff, an elderly woman, run down by the wagon at a street crossing, the case is for the jury, where the evidence tends to show that the crossing was at a point crowded by vehicles and pedestrians, that plaintiff started to cross, and that when she was part of the way over a police officer gave the signal releasing the vehicle

traffic, that the plaintiff by reason of her age was not able to get across before a street car intercepted her passage, and that the defendant's team which was not under proper control ran her down while she was standing still.

2. In such a case the plaintiff is not precluded from recovery because she failed to observe or comply with the traffic regulations of the city, inasmuch as a pedestrian's rights at a street crossing are governed by the laws of the state and not by the municipal regulations of the city.

3. The driver of a wagon at a street crossing after the vehicle traffic has been released by the traffic officer, is not relieved from the duty of keeping his horses under control, and if he fails to do so and injures a pedestrian at the crossing, he or his employer is liable for the consequences.

Argued Oct. 16, 1914.   Appeals, Nos. 115 and 116, Oct. T., 1914, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1913, No. 138, on verdict for plaintiff in case of Benjamin F. Kerbaugh and Rebecca T. Kerbaugh, his wife, v. United States Express Company. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before SULZBERGER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for Benjamin F. Kerbaugh for $1,223 and for Rebecca T. Kerbaugh for $1,000. Defendant appealed.

*Errors assigned* were various instructions quoted in the opinion of the Superior Court.

*W. B. Linn,* with him *H. B. Gill,* for appellant, cited: Lorah v. Rinehart, 243 Pa. 231; Dennison v. North Penn Iron Co., 22 Pa. Superior Ct. 219; Harris v. Commercial Ice Co., 153 Pa. 278; Joyce v. Baltimore & Ohio R. R. Co., 230 Pa. 1.

*S. D. Matlack,* with him *Paul C. Hamlin, Albert L. Moise, Leonard J. Bamberger* and *Albert J. Bamberger,*

for appellees, cited: Christian v. Commercial Ice Co., 3 Pa. Superior Ct. 320; Kleinert v. Del. Ice & Coal Co., 6 Pa. Superior Ct. 594; Corpies v. Sand Co., 31 Pa. Superior Ct. 107.

OPINION BY ORLADY, J., December 20, 1914:

Rebecca T. Kerbaugh was injured while attempting to cross Market street at Thirteenth street, in Philadelphia, and verdicts in favor of herself and of her husband were returned by a jury. This crossing is in the active business district of the city. At this place Market street is 100 feet in width from house line to house line, sixty-two feet from curb to curb, and with nineteen-foot sidewalks. Two car tracks are located thereon, one for east and the other for west-bound traffic. The west-bound track is located twenty-three feet, four inches from the north curb. The car tracks are occupied at this point by 145 cars per hour, averaging two and one-half minutes between cars. This accident happened between eleven and half-past eleven o'clock in the forenoon, which is considered a slow or light period of travel, but, as testified to by an experienced traffic officer stationed at that point, there are always 200 or 300 people passing up and down there. Mrs. Kerbaugh was sixty-nine years old, but fully capable of caring for herself on the streets of a city. In describing the accident, she testified, that she walked down the west side of Thirteenth street, with the intention of crossing Market street to Wanamaker's corner. When she arrived at the Market street curb several persons were waiting for the street traffic to open so that they could pass over Market street, and with them she started over the crossing, but was halted by a west-bound car, and while waiting for it to pass, and standing on the crossing, about four feet from the car track, she was knocked down by a wagon of the defendant company and received serious physical injuries. She testified as follows: "Q. I suppose when you

started to cross Market street from the north side you did not see that street car coming that stopped you, did you? A. No, I just went with the people. Q. You did not look at all whether there was anything coming, you just followed the crowd? A. I followed the people. They were a little bit smarter. If I had not been timid I could have crossed the track, but the car was so close to the crossing that I hesitated. Q. You did not look to see if there was anything coming. You merely followed the crowd. That was it, was it not? A. I knew if other people could cross I could cross. Q. It is a fact you did not look to see? A. No, I waited for the people. Q. You were looking forward, looking across Market street toward Wanamaker's, and not looking down Thirteenth to see if anything was coming? A. No, I was not looking. Q. It happened because you crossed Market street without turning and looking to the east to see if there was a car or anything else coming. That was it, was it not? A. No, when the officer stopped the vehicles, of course, everybody went across the street and I went along with the people. They got across the street. If they had not, they would have been the same as I was. I was just a little slower than they were. I walked as fast as I could, I think. I just hesitated. It came faster than I would walk that distance, and I thought I could cross. I just hesitated. I was within a short distance and hesitated. I saw the car and then something struck me. I think he was as close to me almost as I was to the car. He must have been there as quick as the car. I think I was just about four feet from the tracks." The speed of the wagon was given by witnesses as "going rather fast," "at fifteen miles an hour," "trotting," "a jog trot."

The defense was zealously conducted in the effort to establish the fact that Mrs. Kerbaugh was guilty of contributory negligence, either in leaving the curb, or in not returning to it when halted by the street car.

It was proven that the vehicular and pedestrian travel at this place was controlled by signals from a police officer stationed there for that purpose; and from the manual issued by the municipal authorities it was shown that "One blast of the whistle indicates North and South traffic shall stop, and the East and West traffic may proceed; two blasts, that East and West traffic shall stop, and the North and South may proceed. Pedestrians must await the signal of the traffic policeman wherever stationed, and move in the direction of the traffic only." These rules were received in evidence merely to show that "driving in the place where he, the defendant's servant, drove is not negligence, and that is all it is evidence of. It is not necessarily evidence that he was not driving negligently as respects this woman."

The second assignment of error is to the refusal of the court to affirm the defendant's second point, as follows: "If you find from the evidence that Mrs. Kerbaugh, the plaintiff, was injured because she failed to observe or comply with the signal of Traffic Officer Clark given in the performance of his duty and opening Market street for travel East and West and closing it for travel North and South at Thirteenth street, your verdict must be for the defendant," was answered, as follows: "That I decline to charge. The traffic regulations are administrative features of the Municipal Government of the City of Philadelphia, communicated to traffic officers by regulations not accessible to the public. There is no evidence that the plaintiff had any notice or knowledge of them; and if she had had notice or knowledge of them, it would not have affected her, because the rights of the people of the City of Philadelphia are governed by the laws of the State and are not governed by the municipal authorities of Philadelphia. The rights and duties of citizens are matters of larger concern than the temporary policing of the City of Philadelphia, and however praiseworthy may be

all the efforts of the Police Department in regulating traffic, they may not extend to the deprivation of the citizens' right to that reasonable liberty which is guaranteed by the laws of the State. In short, the Police Department of Philadelphia is not superior to the sovereignty of Pennsylvania in its declaration of the laws governing the citizens."

The fourth assignment, is error, alleged in charging the jury as follows: "There is only one important question of law involved, about which there ought to be no mistake, and that relates to the position of the defendant as to the traffic regulations established by the Department of Police, and carried out by the traffic officers, which releases the traffic on Market street, at which time foot passengers who desire to cross Market street, from North to South or South to North, are inhibited from going across. Whether these are or are not the traffic regulations, I think does not matter to us. Traffic regulations are important points of municipal administration where ordinary rules are insufficient to preserve the public in reasonable safety. They affect primarily wheel traffic at crossings. I am bound to say to you, although it has not yet been declared, I think, by the Supreme Court, but it must be, that the old rule that you have a right to cross the street at any point between crossings, is now impracticable of enforcement, and that the right of a foot passenger to enjoy his liberty in crossing the street is practically limited to the crossings. If we did not hold that, all rapid transit would become impossible. The great improvements in the transportation of goods and freight inside of the city, would all be worthless if everybody had a right, by merely going upon the street, to inhibit the traffic. The crossings, therefore, are the important points, and therefore one of the first questions you will have to solve is: was this lady at the crossing? There is evidence that she was, and there is evidence that she was not, namely, that she was twenty-five feet west

of it. To be twenty-five or fifty feet or 100 feet or any number of feet, except an inappreciable distance (we cannot measure by inches, but to be outside of a reasonable definition of the crossing line), is contributory negligence in crossing a modern street. If, therefore, you find that when the accident happened, she was crossing twenty-five feet west of the crossing line, then she is guilty of contributory negligence and cannot recover, even if the defendant was negligent. If, however, it occurred at the crossing line, then the traffic regulations are not such as would prevent her from crossing the street with reasonable care. What is reasonable care under the circumstances, must be measured by what the circumstances were, and that measurement must be made by you. If that traffic was released, the wheel traffic, as it was, by the police officer, then the United States Express wagon had a perfect right to cross Thirteenth street and to drive on; but that did not impair the right of the plaintiff to walk across Market street, and these two rights were contemporaneous, they had to be harmonized, they had to be brought into some concord, and that concord is that each must observe the rule of common sense and reason, and that rule of common sense and reason is that if this plaintiff, when crossing that street, ought to have seen that wagon coming right upon the line that she was walking, and did not see it, then she is guilty of contributory negligence and cannot recover.

If, however, she was walking with propriety along the crossing, and this man was driving along, trotting, and he saw that woman, and he was of the opinion that he had the right of way and drove on anyhow, although a man of reasonable common sense could have seen that he was driving over her, then he was guilty of negligence and the defendant is liable. That, I think, is the whole law of the case." The right of a pedestrian to cross a street is not limited to the crossing line, and that question is not involved in the case before us. The facts

of each such case fix the measure of care to be exercised under its particular circumstances.

These traffic regulations are personal instructions issued to the police or other city employees by the Department of Public Safety, and are wise, necessary precautions taken by the municipal authorities to protect persons and property in the proper use of highways. Ordinarily they are unknown to pedestrians except as they observe their enforcement by the policeman at the crossing. The rights and obligations of this plaintiff and of the driver of the wagon were fairly set out in the charge of the court, and there was nothing exceptional in the facts, as they are of everyday occurrence. The driver of the wagon in approaching the crossing necessarily noticed that while the wheel traffic was released and he had a right to proceed west, that this plaintiff was standing on or near the west crossing of Thirteenth street, and he was required by the law to exercise care according to the circumstances presented to him. He had crossed the full width of Thirteenth street, and approached its western crossing at such a rate of speed, or in such a direction that this plaintiff was run down. The test of control of a car or wagon is the ability to stop quickly and easily, and as this verdict established the fact that the plaintiff was on the crossing, the inference is obvious that he did not have his horse under proper control. The instructions given to the jury were fully warranted by Christian v. Commercial Ice Co., 3 Pa. Superior Ct. 320; Kleinert v. Delaware Coal Co., 6 Pa. Superior Ct. 594; Corpies v. Sand Co., 31 Pa. Superior Ct. 107; Castor v. Schaefer, 224 Pa. 208; Lorah v. Rinehart, 243 Pa. 231. This verdict means that this plaintiff in the exercise of her right to occupy that crossing, followed the signal of the traffic officer, with a number of other pedestrians, and on account of her age was not able to clear the track before the trolley car occupied it, and was thus placed in an emergent position of danger, which the driver of the defendant's

wagon would reasonably be expected to see. It was purely a question for the jury to decide, whether he was negligent under the circumstances in striking her with his wagon.

The manual of traffic regulations was admitted with a limited effect, and it would have been unreasonable to hold that the private instructions issued to a policeman by his department head should determine the rights of a citizen who had no knowledge of their existence.

The assignments are all overruled, and the judgment is affirmed.

KEPHART and TREXLER, JJ., dissent.